# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

# PARKERSBURG

**EDWIN ALLEN ROBERTS,**

    **Plaintiff,**

v.                                                                                      **CASE NO. 6:11-cv-00684**

**MICHAEL J. ASTRUE,**
**Commissioner of Social Security,**

    **Defendant.**

## PROPOSED FINDINGS AND RECOMMENDATION

This is an action seeking review of the final decision of the Commissioner of Social Security denying the Plaintiff's application for disability insurance benefits ("DIB") and supplemental security income ("SSI"), under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401-433, 1381-1383f.  By standing order, this case was referred to this United States Magistrate Judge to consider the pleadings and evidence, and to submit proposed findings of fact and recommendation for disposition, all pursuant to 28 U.S.C. § 636(b)(1)(B).

Plaintiff, Edwin Allen Roberts (hereinafter referred to as "Claimant"), filed applications for SSI and DIB on April 3, 2009, alleging disability as of March 8, 2009, due to problems with knees, lower back, shoulders, and hands.  (Tr. at 17, 128-34, 135-37, 180-87, 207-12, 225-30.)  The claims were denied initially and upon reconsideration.  (Tr. at 17, 64-68, 69-73, 75-77, 78-80.)  On November 20, 2009, Claimant requested a hearing before an Administrative Law Judge ("ALJ").  (Tr. at 81-82.)  The video hearing was held on March 17, 2011 before the Honorable William R. Paxton.  (Tr. at 27-57, 90, 97.)  By decision dated

March 31, 2011, the ALJ determined that Claimant was not entitled to benefits. (Tr. at 17-26.) The ALJ's decision became the final decision of the Commissioner on August 9, 2011, when the Appeals Council denied Claimant's request for review. (Tr. at 1-4.) On September 30, 2011, Claimant brought the present action seeking judicial review of the administrative decision pursuant to 42 U.S.C. § 405(g).

Under 42 U.S.C. § 423(d)(5) and § 1382c(a)(3)(H)(I), a claimant for disability benefits has the burden of proving a disability. See Blalock v. Richardson, 483 F.2d 773, 774 (4th Cir. 1972). A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims. 20 C.F.R. §§ 404.1520, 416.920 (2002). If an individual is found "not disabled" at any step, further inquiry is unnecessary. Id. §§ 404.1520(a), 416.920(a). The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment. Id. §§ 404.1520(b), 416.920(b). If the claimant is not, the second inquiry is whether claimant suffers from a severe impairment. Id. §§ 404.1520(c), 416.920(c). If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4. Id. §§ 404.1520(d), 416.920(d). If it does, the claimant is found disabled and awarded benefits. Id. If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work. Id. §§ 404.1520(e), 416.920(e). By satisfying inquiry four, the claimant establishes a prima facie case of disability. Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). The burden then shifts

to the Commissioner, McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining physical and mental capacities and claimant's age, education and prior work experience. 20 C.F.R. §§ 404.1520(f), 416.920(f) (2002). The Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job, and (2) that this specific job exists in the national economy. McLamore v. Weinberger, 538 F.2d 572, 574 (4th Cir. 1976).

In this particular case, the ALJ determined that Claimant satisfied the first inquiry because he has not engaged in substantial gainful activity since the alleged onset date. (Tr. at 19.) Under the second inquiry, the ALJ found that Claimant suffers from the severe impairments of chronic lumbar strain and arthralgias status post arthroscopy on the knees. (Tr. at 19-20.) At the third inquiry, the ALJ concluded that Claimant's impairments do not meet or equal the level of severity of any listing in Appendix 1. (Tr. at 20.) The ALJ then found that Claimant has a residual functional capacity for light work, reduced by nonexertional limitations. (Tr. at 20-24.) As a result, Claimant cannot return to his past relevant work. (Tr. at 24.) Nevertheless, the ALJ concluded that Claimant could perform jobs such as fast food worker, cafeteria attendant, and light housekeeping/cleaning positions which exist in significant numbers in the national economy. (Tr. at 25, 52.) On this basis, benefits were denied. (Tr. at 26.)

Scope of Review

The sole issue before this court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence. In Blalock v. Richardson,

substantial evidence was defined as

> "evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'"

Blalock v. Richardson, 483 F.2d 773, 776 (4th Cir. 1972) (quoting Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)). Additionally, the Commissioner, not the court, is charged with resolving conflicts in the evidence. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Nevertheless, the courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974).

A careful review of the record reveals the decision of the Commissioner is supported by substantial evidence.

Claimant's Background

Claimant was 52 years old at the time of the administrative hearing. (Tr. at 31.) He has a ninth grade education. (Tr. at 31.) In the past, he worked in the restaurant industry as a dishwasher and food preparer, in the construction industry as a laborer and assistant safety carpenter, and as an auto assembly line worker. (Tr. at 33-34, 50.)

The Medical Record

The court has reviewed all evidence of record, including the medical evidence of record, and will summarize it below.

On August 6, 2008, Claimant was treated at St. Joseph's Hospital Emergency Department for an abscess on his third right toe. (Tr. at 277-78.)

4

On August 5, 2009, a State agency medical source provided a consultative internal medicine examination report of Claimant. (Tr. at 250-54.) The evaluator, Stephen P. Nutter, M.D. stated that Claimant was claiming disability due to "back pain and joint pain...in the hands, elbows, shoulders, hip left and knees...Claimant reports past surgical history of arthroscopy right and left knee in 1985." (Tr. at 250-51.) He concluded:

> **IMPRESSION**:
> 1.   Chronic Lumbar Strain. There is no evidence of radiculopathy.
> 2.   Degenerative arthritis.
>
> **SUMMARY**: This 50 year old male claiming disability due to back pain and joint pain. There are range of motion abnormalities of the lumbar spine as noted above. Straight leg raise test is negative. There are no sensory abnormalities. Reflexes are abnormal as noted above. Muscle strength testing is normal. These findings are not consistent with nerve root compression.
>
> The claimant reports problems with joint pain. As noted above, there is joint pain, tenderness, swelling and decreased ROM. There is no synovial thickening, periarticular swelling, nodules or contractures consistent with rheumatoid arthritis.

(Tr. at 254.)

On August 5, 2009, Eli Rubenstein, M.D., radiologist, reported that Claimant's x-rays of his lumbar spine, right knee, and left knee showed:

> BILATERAL KNEE 2V.
>
> The soft tissues appear normal. The articular margins are smooth and regular. The joint space is of normal width. No foreign body is seen. There is no evidence of fracture or dislocation.
>
> IMPRESSION: Normal knee, bilaterally.
>
> LUMBAR SPINE:
>
> There is normal alignment of the lumbar spine. The interspaces are normal. There is no compression fracture or appendicular defect. The sacroiliac joints are normal.

IMPRESSION: Normal lumbar spine.

(Tr. at 255.)

On August 20, 2009, a State agency medical source completed a Physical Residual Functional Capacity Assessment [PRFCA]. (Tr. at 257-65.) The evaluator, A. Rafael Gomez, M.D., stated that Claimant's primary diagnosis is "[m]ultiple arthralgias." (Tr. at 257.) He concluded:

> 50 year old claimant with allegations of bilateral knee, bilateral shoulder, bilateral hand, and lower back problems. He reports only being able to lift 25 pounds, only walking 2-4 blocks, difficulty using hands and standing while preparing food, must sit if cleaning. The MER shows normal gait, strength, grip strength, fine manipulation, and DTRs. His sensation and straight leg raise are normal. He did have back pain with ROM testing with some decrease in ROM of the lumbar spine. However, all other ROM is normal. He did have pain and tenderness of the shoulders and knees with motion testing. The x-rays of the knees and lumbar spine were normal. The MER supports partial credibility, but his report of limitations exceed what MER will support.
>
> \*       \*       \*
>
> Non severe physical impairment.

(Tr. at 262, 264.)

On August 30, 2009, Claimant was treated at St. Joseph's Hospital Emergency Department for "chronic knee pain." (Tr. at 279-80.)

On October 27, 2009, a State agency medical source completed a Physical Residual Functional Capacity Assessment [PRFCA]. (Tr. at 266-74.) The evaluator, Atiya M. Lateef, M.D., stated that Claimant's primary diagnosis is "[a]rthralgias" and his secondary diagnosis is "[l]umbar strain." (Tr. at 266.) Dr. Lateef found that Claimant had medium exertional limitations, could frequently perform all postural limitations save for balancing, kneeling, and crawling, which could occasionally be performed, and climbing

6

ladder/rope/scaffolds, which could never be done. (Tr. at 268.) She found that Claimant had no manipulative, visual, communication, or environmental limitations save to avoid concentrated exposure to cold, vibration, and hazards. (Tr. at 269-70.) She concluded: "Claimant with multiple arthralgias, lumbar strain. RFC reduced to medium." (Tr. at 273.)

On September 13, 2010, Claimant was treated at St. Joseph's Hospital: "Hit by car last PM…This AM swelling and pain R [right] knee. Aching in low back." (Tr. at 276.) Records indicate that Claimant was in "no acute distress." (Tr. at 275.)

On October 4, 2010, Michael Shramowiat, M.D., Mountaineer Pain Relief & Rehabilitation Centers, examined Claimant and made these findings:

> **HISTORY**: Edwin is a 51-year-old, right-handed black male who presents today with chief complaint of low back pain, pain and numbness in the right lower extremity, pain at the right knee. The patient was involved in a motor vehicle accident on 09/12/10. At that time he was riding his bicycle. The vehicle struck him on the right side. It knocked him on the ground. He was dragged from the sidewalk to the middle of the street. He hit his head on the hood but no loss of consciousness. He was seen at St. Joseph's Hospital on 09/13/10. He did have x-ray of the lumbar spine. This shows hypertrophic spurring anteriorly in the lower lumbar spine. X-ray of the right knee shows some narrowing of the medial femoral tibial compartment. No acute fracture was seen.
>
> \* \* \*
>
> **PHYSICAL EXAM**: Bilateral lower extremity strength is 5/5. Sensation grossly intact and symmetrical to light touch. DTRs 2+ at the patella and Achilles bilaterally. Straight leg raises negative bilaterally. He has pain at the end range of extension at the right knee. He has crepitus at both knees. Moderate muscle tightness in the lumbar paravertebral region bilaterally.
>
> **ASSESSMENT**:
> 1. Right lumbar radiculopathy.
> 2. Low back pain.
> 3. Right knee contusion.
>
> **TREATMENT PLAN**:
> 1. Vicodin 5 mg p.o. q.i.d.
> 2. Robaxin 750 mg p.o. q.h.s.
> 3. Meloxicam 15 mg p.o. q.d.

> **RETURN**: Follow up in three weeks.

(Tr. at 282-83.)

On October 12, 2010, Jamy Fox, Physical Therapist, Mountaineer Pain Relief & Rehabilitation Centers, noted in an Initial Physical Therapy Evaluation report:

> The patient is a 51-year-old right handed male referred to physical therapy by Dr. Shramowiat with a diagnosis of right lumbar radiculopathy and right knee contusion...
>
> **Special Tests**: Negative straight leg raise in the right lower extremity. Negative straight leg raise in the left lower extremity. The patient had increased complaints of low back pain with both right and left straight leg raising testing. Straight leg raise testing did reveal moderate bilateral hamstring tightness. Positive patellar compression test in the right and left knee. Minimal laxity was noted in the right knee at the lateral collateral ligament. Minimal laxity was noted at the left knee at the lateral collateral ligament. Slightly positive meniscus test in the right knee. Slightly positive meniscus test in the left knee...
>
> **TREATMENT PLAN**: This patient will be seen in physical therapy two to three times a week for approximately four to six weeks. He will be instructed in progressive therapeutic exercises...

(Tr. at 287-88.)

On October 25, 2010, Dr. Shramowiat noted:

> **HISTORY**: Edwin returns today with continued complaints of low back pain. He still has pain down the right leg. He is in physical therapy. He is getting too sedated with the Robaxin and will discontinue it. He has been taking the Vicodin 5 mg p.o. q.i.d. and Meloxicam 15 mg p.o. q.d.
>
> **PHYSICAL EXAMINATION**: Bilateral lower extremity strength is 5/5. Sensation grossly intact and symmetrical to light touch. DTRs 2+ at the patella and Achilles bilaterally. Weakly positive right straight leg raise. He has crepitus at both knees. He has a five degree extension lag at both knees.
>
> **ASSESSMENT**:
> 1.  Osteoarthritis of the knees.      715.36
> 2.  Right lumbar radiculopathy.    724.4
> 3.  Low back pain.                        724.2
> 4.  Pain in limb.                             729.5

(Tr. at 281.)

On November 15, 2010. Ms. Fox noted in a Discharge Summary: "Pt [patient] completed only 2 PT [physical therapy] visits. Last visit 10/15/10. As of 11/15/10, he has not returned to PT." (Tr. at 284.)

Claimant's Challenges to the Commissioner's Decision

Claimant asserts that the Commissioner's decision is not supported by substantial evidence because the ALJ erred when he "failed to develop the record by not ordering a post-hearing consultative examination." (Pl.'s Br. at 2.) Claimant argues:

> Following the consultative examination (August 5, 2009, Dr. Stephen Nutter), on September 12, 2010, the Plaintiff was involved in an accident in which he was struck by a car while riding his bicycle (Transcript pgs. 275-76)...
>
> At the hearing, the Plaintiff's representative requested that the ALJ order a new consultative examination because of the Plaintiff's difficulty acquiring medical treatment and the accident occurring after the consultative examination in the file. (Transcript pg. 56). The Plaintiff was unable to attain medical coverage and therefore unable to provide sufficient evidence for the ALJ to be able to assess his residual functional capacity after his accident.
>
> The Plaintiff was not sent for a consultative examination nor was the file sent to any physician for a residual functional capacity opinion following the Plaintiff's accident. This is of particular importance in this case because the Plaintiff was 50 years of age at his onset date, has a limited education, and unskilled past work at the medium and heavy levels (Transcript pg. 24). Therefore, if limited to sedentary work, Medical Vocational Rule 201.09 would apply and the Plaintiff would be found disabled.

(Pl.'s Br. at 3-4.)

The Commissioner's Response

The Commissioner responds that the ALJ's decision is supported by substantial evidence because "the ALJ satisfied his duty to reasonably develop the record." (Def.'s Br.

at 7.)  The Commissioner argues:

> [U]nder the regulations and controlling law, the ALJ was not required to obtain a consultative examination following Plaintiff's accident because the record contained sufficient evidence for the ALJ to render a decision. Indeed, the record contained no fewer than four treating source examinations following Plaintiff's accident, so there was no need to order a consulting doctor to perform the same examination that had already been performed multiple times by treating sources…
>
> The regulations leave it to the discretion of the ALJ to determine when a consultative examination is necessary, and the primary focus is whether the record contains sufficient evidence for the ALJ to determine whether a claimant is, or is not, disabled.
>
> \*     \*     \*
>
> [T]he ALJ noted that after Plaintiff was hit by a car in September of 2010, he received treatment for low back pain and mild knee swelling at St. Joseph's hospital (Tr. 23).  There, his treating sources noted he was in no acute distress, his motor function, reflexes, and sensation were normal, his extremities had a full range of motion, he had no weakness or numbness, and he had no difficulty walking (Tr. 275-76).  Therefore, the lack of significant weakness or difficulty walking upon a treating examination the day after the accident shows that the accident did not cause significant functional limitations, and this examination alone made an additional consultative examination unnecessary.

(Def.'s Br. at 7-9.)

Analysis

In Cook v. Heckler, the Fourth Circuit noted that an ALJ has a "responsibility to help develop the evidence."  Cook v. Heckler, 783 F.2d 1168, 1173 (4th Cir. 1986).  The court stated that "[t]his circuit has held that the ALJ has a duty to explore all relevant facts and inquire into the issues necessary for adequate development of the record, and cannot rely on evidence submitted by the claimant when that evidence is inadequate."  Id.  The court explained that the ALJ's failure to ask further questions and to demand the production of further evidence about the claimant's arthritis claim, in order to determine if it met the

requirements in the listings of impairments, amounted to a neglect of his duty to develop the evidence. Id.

Nevertheless, it is Claimant's responsibility to prove to the Commissioner that he or she is disabled. 20 C.F.R. §§ 404.1512(a) and 416.912(a) (2011). Thus, Claimant is responsible for providing medical evidence to the Commissioner showing that he or she has an impairment. Id. §§ 404.1512(c) and 416.912(c). In Bowen v. Yuckert, the Supreme Court noted:

> The severity regulation does not change the settled allocation of burdens of proof in disability proceedings. It is true . . . that the Secretary bears the burden of proof at step five . . . [b]ut the Secretary is required to bear this burden only if the sequential evaluation process proceeds to the fifth step. The claimant first must bear the burden . . . of showing that . . . he has a medically severe impairment or combination of impairments . . . . If the process ends at step two, the burden of proof never shifts to the Secretary. . . . It is not unreasonable to require the claimant, who is in a better position to provide information about his own medical condition, to do so.

Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987).

Although the ALJ has a duty to fully and fairly develop the record, he is not required to act as plaintiff's counsel. Clark v. Shalala, 28 F.3d 828, 830-31 (8th Cir. 1994). Claimant bears the burden of establishing a prima facie entitlement to benefits. See Hall v. Harris, 658 F.2d 260, 264-65 (4th Cir. 1981); 42 U.S.C.A. § 423(d)(5)(A) ("An individual shall not be considered to be under a disability unless he furnishes such medical and other evidence of the existence thereof as the Commissioner of Social Security may require.") Similarly, he or she "bears the risk of non-persuasion." Seacrist v. Weinberger, 538 F.2d 1054, 1056 (4th Cir. 1976).

At the March 17, 2011 hearing before the ALJ, Claimant's representative concluded

his remarks by stating:

>   ATTY:   Okay. That's all that I have, Your Honor. I would just like to further comment that the current physical CE is a year and a half old. It was also prior to his accident in September, so I would just like to suggest that if a favorable is not able to be obtained that, perhaps, we could send him for further testing.
>
>   ALJ:    Okay. Well, I'll consider your motion.
>
>   ATTY:   Thank you, Your Honor.
>
>   ALJ:    And, Mr. Roberts, I will consider the testimony that I've heard today. I'll review the documents that we added in the record. I'll decide whether or not we need to obtain additional evidence. If I conclude that the record is sufficient to reach a Decision in your case, that Decision would be in writing and you'd get a copy of it in the mail and your attorney would get a copy of it in the mail.

(Tr. at 55-56.)

The ALJ made these findings in his March 31, 2011 Decision regarding the medical evidence of record, Claimant's alleged limitations, and Claimant's credibility:

> The objective findings do not support the extreme limitations alleged by the claimant and reveal that he is not credible. The record reflects no actual treatment for this alleged impairment at the time the claimant initiated his application for benefits. In August 2009, the claimant underwent a consultative examination by Dr. Stephen P. Nutter. From his examination and interview with the claimant, Dr. Nutter reported pain present for seven years. He noted that the claimant had never attended physical therapy and had never had an x-ray, CT scan, MRI, myelogram, or EMG performed on his back. The claimant alleged that his back pain was present 2-3 days per week. He also reported drinking a 6-pack per week. On examination, the left shoulder showed some evidence of pain with movement and tenderness. The right shoulder showed some evidence of crepitus, and pain with movement and tenderness. Tinel's sign at both elbows and both wrists was negative. Dr. Nutter observed that the claimant was able to make a fist bilaterally. There was no atrophy of the hands. No Heberden's or Bouchard's nodes were found. Dr. Nutter indicated that the claimant was able to squeeze his hand well with each hand. He recorded bilateral grip strength as 5/5. No redness, tenderness, swelling, or nodules were noted in the hands. Dr. Nutter indicated that the claimant was able to write and pick up coins in either hand

without difficulty. He observed that the left knee showed evidence of mild effusion and pain with movement. There was no pain with range of motion testing in the cervical spine, and no paravertebral spas[m] in the cervical spine. Examination revealed normal curvature of the dorsolumbar spine. Dr. Nutter mentioned that the claimant experienced back pain with range of motion testing of the lumbar spine. He noted that there was no evidence of paravertebral muscle spasm. Straight leg test was negative. Dr. Nutter found that he claimant could stand on one leg with no difficulty, and no hip joint tenderness. Patrick's test was negative. Further, the claimant could walk on his toes and had a tandem [able to perform tandem gait] without difficulty. However, the claimant was unable to squat due to back and knee pain. A bilateral knee x-ray was normal, as was the lumbar spine x-ray. Dr. Nutter diagnosed degenerative arthritis and chronic lumbar strain with no evidence of radiculopathy. (Exhibit 1F).

Records from St. Joseph's Hospital revealed treatment... in August 2009 for a rash with no mention of low back pain. The treatment notes indicated a bilateral knee scope in 1985 and history of chronic knee pain. Subsequent treatment notes reveal the claimant was treated in September 2010 for low back pain and mild knee swelling after being hit by a car. (Exhibit 4F). In October 2010, the claimant was seen by Dr. Michael Shramowiat. Dr. Shramowiat mentioned that an x-ray of the lumbar spine demonstrated hypertrophic spurring anteriorly in the lower lumbar spine. He also noted that a right knee x-ray revealed some narrowing of the medial femoral tibial compartment with no acute fracture. He found negative straight leg raises bilaterally. He further indicated crepitus at both knees. He noted muscle tightness in the lumbar paravertebral region bilaterally. Dr. Shramowiat assessed right lumbar radiculopathy, low back pain, and right knee contusion. He prescribed Vicodin 5 milligrams, Robaxin 750 milligrams, and Melociam [Meloxicam] 15 milligrams. Three weeks later the claimant had a "weakly positive right straight leg raise." Bilateral lower extremity strength was 5/5. Dr. Shramowiat discontinued Robaxin as it made the claimant "too sedated." Notes reflect the claimant only attended two of his physical therapy visits and had not returned as of November 2010. (Exhibit 5F).

There is evidence that the claimant stopped working for reasons not related to the allegedly disabling impairments. The claimant testified that he rode his bike to work and was fired due to lateness.

The claimant's alleged limitations and symptoms are not fully credible. Despite his alleged back and knee pain, the claimant admitted walking three-quarters of a mile to the hearing. From his hearing, testimony, and his adult function report, the claimant acknowledged being able to lift 25-30 pounds. He also alleged issues with migraine headaches and vision, which are not supported in the available medical record of evidence. Furthermore, the

> claimant manages his alleged pain with over-the-counter medication such as Tylenol, Advil, and Ibuprofen.
>
> As for the opinion evidence, in terms of the physical impairments the record does not contain any opinions from treating or examining physicians indicating that the claimant is disabled or has physical limitations greater than determined in the residual functional capacity above. Given the claimant's allegations of totally disabling symptoms, one might expect to see some indication in the treatment records of restrictions placed on the claimant by the treating doctor. Balancing the medical record of evidence along with the claimant's subjective complaints, the undersigned has given the claimant the benefit of the doubt in finding the above residual functional capacity.
>
> The State agency medical consultant Dr. A. Rafael Gomez determined that the claimant did not have a severed [sic, severe] physical impairment. Dr. Gomez's findings receive little weight as they are inconsistent with the medical evidence of evidence.
>
> The State agency medical consultant Dr. Atiya M. Lateef determined that the claimant had a residual functional capacity to work at the medium exertional level. Dr. Lateef found that the claimant could not climb ladders, ropes, or scaffolds. Dr. Lateef further determined that the claimant could occasionally balance, kneel, and crawl. Dr. Lateef also found that the claimant must avoid concentrated exposure to cold, vibration, and hazards such as heights and machinery. (Exhibit 3F). Dr. Lateef's opinion receives little weight in so much as it refers to the claimant's exertional limitations as it is inconsistent with the record of evidence. The portion of Dr. Lateef's opinion referring to nonexertional limitations is given some way [sic, weight] as it is generally consistent with the medical record of evidence.

(Tr. at 22-24.)

As noted by the Commissioner, Claimant's representative had the standard incorrect in his closing remarks at the hearing. The correct standard is that the ALJ must obtain additional evidence if there is insufficient evidence to make a decision, not insufficient evidence to make a favorable decision. (Def.'s Br. at 10.) In the subject claim, there is substantial evidence in the record establishing Claimant's physical condition after the September 12, 2010 incident wherein Claimant was hit by a car while riding his bicycle.

There are the September 13, 2010 records from St. Joseph's Hospital, the October 4, 2010 and October 25, 2010 records from Dr. Shramowiat, and the October 12, 2010 and November 15, 2010 records from the physical therapist, Ms. Fox. (Tr. at 275-89.) These records show that Claimant received medical care after his accident and that he stopped coming to physical therapy without any explanation. (Tr. at 281-87.) Obviously medical treatment was available to Claimant despite his lack of medical coverage and he chose to not have the available medical treatment. (Tr. at 30; Pl.'s Br. at 3.)

The medical evidence of record does not show that Claimant had disabling injuries following the September 2010 accident. The ALJ gave Claimant the benefit of any doubts and reduced his residual functional capacity to performing light work with additional nonexertional limitations. (Tr. at 20.) On March 17, 2011, the Vocational Expert identified three jobs that Claimant would be able to perform considering his age, education, work experience, and residual functional capacity that exist in significant numbers in the national economy. (Tr. at 25, 52-53.)

As stated earlier, although the ALJ has a duty to fully and fairly develop the record, he is not required to act as plaintiff's counsel. Claimant bears the burden of establishing a prima facie entitlement to benefits. Similarly, he or she bears the risk of non-persuasion. As pointed out by the Commissioner, "If Plaintiff believed that more evidence could have led to a favorable decision, it was incumbent upon Plaintiff to present it. See Weise v. Astrue, Civ. A. No. 08-271, 2009 WL 3248086, at *4-5 (S.D.W.Va. 2009)(an "ALJ is entitled to assume that a claimant represented by counsel 'is making his strongest case for benefits.'")" (Def.'s Br. at 10-11.)

For the reasons set forth above, it is hereby respectfully **RECOMMENDED** that the

presiding District Judge **AFFIRM** the final decision of the Commissioner and **DISMISS** this matter from the court's docket.

The parties are notified that this Proposed Findings and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable John T. Copenhaver, Jr.  Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen days (filing of objections) and then three days (mailing/service) from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this court, specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made, and the basis of such objection.  Extension of this time period may be granted for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of <u>de novo</u> review by the District Court and a waiver of appellate review by the Circuit Court of Appeals.  <u>Snyder v. Ridenour</u>, 889 F.2d 1363, 1366 (4th Cir. 1989); <u>Thomas v. Arn</u>, 474 U.S. 140, 155 (1985); <u>Wright v. Collins</u>, 766 F.2d 841, 846 (4th Cir. 1985); <u>United States v. Schronce</u>, 727 F.2d 91, 94 (4th Cir. 1984).  Copies of such objections shall be served on opposing parties, Judge Copenhaver, and this Magistrate Judge.

The Clerk is directed to file this Proposed Findings and Recommendation and to transmit a copy of the same to counsel of record.

 October 23, 2012
      Date

*Mary E. Stanley*
Mary E. Stanley
United States Magistrate Judge